# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

KEITH M. WHITAKER, SR.,

                       :

        Petitioner,                           Case No. 1:10-cv-306

                       :            Chief Judge Susan J. Dlott
     -vs-                             Magistrate Judge Michael R. Merz

WARDEN, Toledo Correctional
 Institution,

                       :

        Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner Keith M. Whitaker, Sr., brought this habeas corpus action *pro se* pursuant to 28 U.S.C. § 2254 to obtain release from his imprisonment on a committed sentence to Respondent's custody. The Petition avers that Mr. Whitaker was convicted in the Scioto County Common Pleas Court on two counts of having weapons under disability and one count of failure to appear.

Whitaker pleads the following grounds for relief:

> **Ground One:** Trial Court committed an abuse of discretion by denying appellants request to obtain new counsel.
>
> **Supporting Facts:** The Trial Court stated that the Petitioner waited untill [sic] the morning of trial to request new counsel, as an excuse to deny him of effective counsel. Petitioner had only discovered the true depth of counsels betrayal in the week before trial. It had not been a "morning of trial" request, because the Petitioner had refused to talk to her for days, and had told her in the week before trial that he wanted her off of his case. The morning of trial, the Petitioner and counsel both openly stated before the Court of how there was a "conflict in of Interest" and a "Breakdown in Communication. " The Trial Court only allowed Petitioner to state the "Breach of

-1-

Confidentiality" that counsel had committed, before the prosecution cut him off criticizing, and berating the fact that he had given counsel a direct order to never discuss him and/or his case with anyone in his family, and how she had violated his trust by doing just that when she discussed Petitioner and/or his case with his son, Mathew S. Whitaker.

Additionally, Petitioner ""discovered counsel had lied from the beginning about having access to, and knowing the real name of the passenger in the Petitioner's car who was his alibi witness, saying she had no way to find out her name, that it was Petitioner's responsibility to locate, subpoena, and transport any witnesses at his own cost. This decieving [sic] tactic deprived Petitioner of key alibi witnesses that could have very well resulted in acquittal.

In Court, the morning of trial, counsel showed Petitioner that she had had the name of the passenger all along, blaming and brating [sic] Petitioner for not knowing the real name of his passenger, acting as if she had no way to know who he was talking about even though there had only been "one" passenger in the car. Also being the only person to be arrested with the Petitioner.

Petitioner actually had two alibi witnesses. His oldest son who was the owner of the pickup truck that was involved in the case that was reversed, Keith M. Whitaker Jr., and Angela Trapp, the passenger in the car of the case at hand. These witnesses were never subpoena'ed because of counsel's deception. Approximately one or two weeks before trial, Petitioner learned from another inmate it was in fact counsel's duty to subpoena witnesses. It was then admitted by counsel to be true when confronted via phone by Petitioner. Petitioner then mailed the two names to counsel, per her own instructions. When mailed, Petitioner called counsel's office and spoke to her secretary [sic] telling her where on the papers the names were located, (being on the back of the last page). After dramaticly [sic] making the discovery (in Court, the morning of trial) of where she did in fact have the names, she berated Petitioner for not being able to find the names and refused to request a continuance to subpoena witnesses. Please note: When Petitioner sent the witness list to counsel's office, he did not know Angela Trap by that name. He presented her as a witness, titled "Jane Doe passenger."

Additionally, right after the Petitioner's hearing to recuse Judge William T. Marshal, and Assistant Prosecutor Joseph Hale (approximately a week before trial), counsel refused to file for a

-2-

Change of Venue, as was requested by Petitioner, even though counsel herself had told Petitioner that he would never recieved [sic] an unbiased jury in Scioto County because of all the past prejudiced publicity against Petitioner, in the Portsmouth Daily Times. This is what had been the final straw that had made Petitioner call her office right afterward and tell her that he wanted her off of his case. This was "days" before the trial.

All these deceptions and lies were learned in the last week before trial, up to the morning of trial. The trial Court did in fact abuse its descretion [sic] by failing to inquire into, and granting Petitioner's request for new counsel.

**Ground Two:** The evidence is Constitutionally insufficient to sustain the Appellants convictions of having a weapon while under disability.

**Supporting Facts:** The State failed to present any evidence that the Appellant had ever owned, held, or fired the rifle or handgun in either case. Also, Deputy Spencer testified that he did not know whether the rifle belonged to the Petitioner. Neither the car or truck that the Petitioner was in fully belonged to him, nor were they in his name. The Petitioner's passenger was the only person that had any knowledge of the rifle or the fact that it was loaded. The Trial Court and the Court of Appeals both falsely fortified this charge by commenting on the Petitioners movements during arrest, (which seems to be the only thing anyone can use to point guilt to the Petitioner), stating, "these furtive movements could help prove beyond reasonable doubt that Whitaker knew the rifle was in the car." This being pure fiction, because, Petitioner reached in [front] of himself for his cigarettes. The rifle was in the seat [behind] Petitioner, under his passengers coat. Petitioner knew he was going to jail for driving without license. He wanted to smoke a cigarette before he got placed in the cruiser [which there was no doubt of it taking place]. There was nothing else in front of the Petitioner besides his cigatettes, [sic] which the Officer did find while searching the vehical [sic]. It is unreasonable and unrealistic to say that the Petitioners reaching for cigarettes showed he was guilty of having a weapon while under disability. The only thing the Petitioner did know he was guilty of was driving without a license.

There is nothing showing in any way that Petitioner even had knowledge of any firearm, therefore, showing that the evidence is not only Constitutionally insufficient to convict the Petitioner - it is

nonexistant [sic] period.

Petitioner had NO knowledge of any firearm, in any way.

**Ground Three:**  The Trail [sic] Court erred and violated appellants Fifth Amendment rights in premitting [sic] the State to elicit testimony about Appellants post-arrest silence, and counsel was ineffective in failing to object to that testimony.

**Supporting Facts:**  The State elicited testimony from the States witness about Petitioners Post-arrest silence. Neither State nor trial counsel objected or gave curative instructions to correct this violation of Petitioner's Fifth Amendment Right to remain silent. Making this not only a Constitutional violation via vendictive prosecution [sic], but also making trial counsel ineffective and incompetent for failing to object to this PLAIN ERROR. On top of that, States witness produced false information as to what the Petitioner had actually said.

**Ground Four:**  Trial Court erred and violated Petitioner's Fifth Amendment Right in permitting the State to elicit testimony about Petitioner's post-arrest silence.

**Supporting Facts:**  The State elicited testimony from the States witness, Officer Bower, concerning Petitioner's exercising his Fifth Amendment, Right To Remain Silent. By doing so, violating Petitioners Fifth Amendment. Appellate counsel raised this issue in his third Assignment of Error in his Direct Appeal to the Court of Appeals, but neglected to state that the jury had been tainted by this prejudice testimony on all three cases, resulting in the Court of Appeals only reversing the second Weapons Under Disability, to which Officer Bower had been the arressting [sic] officer. Appellate counsel is ineffective for neglecting to state how Officer Bower's Constitution violating testimony had also affected and prejudiced the jury on the other two cases. If appellate counsel would have stated that all three cases had been prejudiced by this testimony, it may have very well led to a reversal of all three charges, as it should have.

Threr [sic] is no possible way the same jury of all three charges could have seperated [sic] prejudiced thoughts of the Petitioner. Even though the jury had been instructed of it being three separate [sic] cases, there was only one jury, and only one Defendant.  All three cases were tried at the same time. All three charges should have been reversed.

-4-

> Therefore, these two charges now being presented are the result of a trial plagued with prejudice which should also fall under the same PLAIN ERROR violation that the second Weapon Under Disability charge was reversed on.

(Petition, Doc. No. 1, PageID 36-46).

## Procedural History

These proceedings arise from three separate but related cases in the Scioto County Common Pleas Court. Mr. Whitaker was indicted in that court for having weapons under disability related to his alleged possession of a 30/30 Marlin rifle in a car on May 16, 2006. (Case No. 06CR-750) While he was out on bond on that case, he was indicted for having weapons under disability for possessing a .45 caliber handgun in a pickup truck on October 14, 2006[1]. (Case No. 06CR-1674) Despite the new indictment, Mr. Whitaker was still out on bond when he failed to appear for a pretrial conference on January 5, 2007, for which he was indicted for failure to appear. (Case No. 07CR-81). The cases were consolidated for trial. On the morning of trial (May 17, 2007), Whitaker moved to discharge his attorney, but the trial judge refused and the case was tried to a jury, resulting in three guilty verdicts. On May 24, 2007, Whitaker was sentenced to the 11.5 year sentence he now seeks to set aside.

Appointed counsel on direct appeal briefed three assignments of error:

> 1. The trial court committed an abuse of discretion by denying appellant's request to obtain new counsel.

---

[1] This indictment also included a count for possession of cocaine on which Whitaker was acquitted.

-5-

> 2. The evidence is constitutionally insufficient to sustain the Appellant's convictions of Carrying a Concealed Weapon and Having a Weapon While Under Disability.
>
> 3. The trial court erred and violated Appellant's Fifth Amendment rights in permitting the State to elicit testimony about Appellant's post-arrest silence, and counsel was ineffective in failing to object to that testimony.

(Appellant's Brief, Exhibit 10 to Return of Writ, Doc. No. 8.)  Claiming ineffective assistance of appellate counsel, Whitaker sought to replace his appellate attorney.  The Court of Appeals rejected that request, overruled the first two assignments of error, but reversed the conviction in 06CR-1674 on the third assignment and remanded for a new trial.  *State v. Whitaker*, 2008 Ohio 4149, 2008 Ohio App. LEXIS 3501 (Ohio App. 4th Dist. Aug. 11, 2008). From the part of the judgment which affirmed the other two convictions, Whitaker attempted a delayed appeal to the Ohio Supreme Court without success.

On May 28, 2008, Whitaker filed a petition for post-conviction relief on seven grounds.  The trial court denied the petition and Whitaker took no appeal.  On January 2, 2009, Whitaker filed an application for reopening the direct appeal to raise claims of ineffective assistance of appellate counsel.  The Application was denied February 20, 2009, as untimely.  On remand in Case No. 06CR-1674, Whitaker pled guilty to one count of having weapons under disability and received an agreed sentence of two years.  While he took no appeal from that sentence, he did move on December 28, 2009, to withdraw his guilty plea; the motion was denied.  Whitaker appealed that denial and the appeal apparently remains.  Because Petitioner's state court remedies for any error he claims in the re-trial of case 06CR1674 are not exhausted, this Court does not consider them in this case.

## Analysis

### Ground One

In his first ground for relief, Whitaker claims the trial court abused its discretion in refusing to appoint him new counsel.  The Warden concedes that this claim is properly exhausted and not defaulted (Return, Doc. No. 8, PageID 73).  The Ohio Court of Appeals decided this claim on the merits, holding:

> [*P2] First, Whitaker argues that the trial court abused its discretion in denying his morning-of-trial request for substitute appointed counsel. Because the record does not show the grounds for any complaint other than Whitaker's vague and belated allegation that his appointed counsel had "betrayed the bre[a]ch of confidentiality," we cannot say that the trial court abused its discretion in denying his request for replacement counsel.

> [*P15] "'To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.'" *State v. Ketterer,* 111 Ohio St.3d 70, 2006 Ohio 5283, 855 N.E.2d 48, at P 149, quoting *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792,  paragraph four of the syllabus. We review the trial court's decision regarding the substitution of counsel for the abuse of discretion. *Id.; Coleman,* 37 Ohio St.3d at 292.

> [*P16]  We cannot say that the trial court abused its discretion in denying Whitaker's motion for substitute counsel. Here, Whitaker waited until the morning of trial to request new trial counsel, although the record suggests that Whitaker was aware of the basis for this motion weeks before trial. We recognize that his trial counsel admitted that there had been a break-down in communication and that she was concerned about her ability to zealously represent him during the trial if he did not speak to her. However, it was Whitaker who refused to talk to her, and the record does not adequately demonstrate his reasons for doing so. Although Whitaker complained of a breach

of confidentiality by trial counsel, we cannot tell from the record exactly what Whitaker's attorney did and whether Whitaker's complaint was reasonable. The trial court deemed Whitaker's sense of betrayal to be "ridiculous." Whitaker also argued that he could not trust his trial counsel because she had failed to subpoena witnesses on his behalf. However, trial counsel explained that Whitaker had never told her that he would be sending her a list of witnesses and that she did not realize the list was on the back of a document he had asked her to photocopy for him. There is nothing in the record that contradicts this explanation, nor is there anything in the record that suggests who Whitaker's potential witnesses were and whether it would have been unreasonable for counsel to fail to subpoena these witnesses.

[*P17] Because the record does not show that Whitaker's complaints against his court-appointed attorney were reasonable or that there was such a break-down of the attorney-client relationship so as to jeopardize his right to the effective assistance of counsel, we cannot conclude that the trial court abused its discretion in denying his motion for substituted counsel on the morning of trial. Ketterer at P 149, ("If the complaint is unreasonable, the trial court may 'require the trial to proceed with assigned counsel participating.'" (quoting *State v. Deal* (1969), 17 Ohio St.2d 17, 244 N.E.2d 742, syllabus)); *Coleman*, 37 Ohio St.3d at 292; see, also, *State v. Hibbler*, Clark App. No. 2001-CA-43, 2002 Ohio 4464, at P 11 ("'[T]he refusal to replace an appointed attorney is not an abuse of discretion when the request is made at the last minute prior to trial and adequate reasons for the request are not set out in the record.'" (*quoting State v. Harper* (1988), 47 Ohio App.3d 109, 113, 547 N.E.2d 395)). Accordingly, we overrule his first assignment of error.

*State v. Whitaker, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362 (2000).

-8-

The decision to grant or deny a motion for continuance lies within the sound discretion of the trial court and cannot be reversed absent a showing that the decision was arbitrary, unreasonable, or unconscionable. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 850, 11 L. Ed. 2d 921, 931 (1964). Factors which should be considered are the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel, and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the party seeking the continuance contributed to the circumstances which gave rise to the request; and other relevant factors, depending on the unique facts of each case. *State v. Unger,* 67 Ohio St. 2d 65, 67, 423 N.E. 2d 1078, 1080 (1981), citing *United States v. Burton*, 584 F.2d 485 (D.C. Cir. 1978), and *Giacalone v. Lucas*, 445 F.2d 1238 (6th Cir. 1971).

In this case it is clear that Whitaker had appointed counsel, that he refused to communicate with her as of the Friday before trial, and that he did not wish to represent himself, but wanted substitute "proper" counsel (Trial Tr. 354-355). The reasons he stated on the record were failure to subpoena (unnamed) witnesses he wanted and her breach of confidentiality by talking with one of his sons. *Id.* at 350, 353. The trial judge's reasons for denying the request were that it was not made until the morning of trial in a case which had been on the docket for a year and in which Whitaker had acquired additional charges while awaiting trial. The trial judge also found the breach of confidentiality argument "ridiculous" when it was the son who initiated the calls. In any event, the claim of breach was vague and the prosecutor stated for the record that he had not received any fruits of any such conversation.

In his Response (reply) to the Return of Writ, Mr. Whitaker makes many pages of allegations

about professional misconduct by Ms. Scott, his appointed counsel, accusing her of lying in many different respects.  However, when a federal habeas corpus court decides whether a state court decision is objectively unreasonable, it is limited to the record that was before the state court when it made the decision.  *Cullen v. Pinholster*, 563 U.S. ___, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011). The only facts that were on the record when the state court made the decision not to allow a change of attorneys and which the Court of Appeals reviewed were the "vague and belated allegation" about breach of confidentiality and the claim of not subpoenaing unnamed witnesses[2].

When a convicted person relies on facts which are not in the record on appeal to support a claim that he or she is being imprisoned unconstitutionally, Ohio provides a process for getting those facts before a court: affidavits submitted with a petition for post-conviction relief under Ohio Revised Code § 2953.21.  While Mr. Whitaker filed such a petition and included claims relating to ineffective assistance of trial counsel and denial of new counsel, he did not attach any affidavits or appeal from its denial.

On the basis of the record before it, the Court of Appeals decision was not an objectively unreasonable application of clearly established Supreme Court precedent.  The reasons the trial judge gave for denying new counsel are ones which would occur to any trial judge facing this situation.  The Ohio Speedy Trial statute and indeed the United States Constitution call for dispatch in trying cases and this one had been delayed a year; if new counsel had been appointed, it clear would have been at least another month before trial.  Whitaker put no substance on the breach of

---

[2] Whitaker claims in his Response (reply) that he wanted to tell the trial court "of the other abuses he suffered at the hands of Ms. Scott," but was rudely interrupted by the prosecutor, Mr. Kuhn.  (Response, Doc. No. 21, PageID 704).  The record shows nothing of the kind. Of course if the record did not accurately reflect what happened, appellate counsel could have moved to correct the record on appeal, but this did not happen.

confidentiality claim so as to enable the judge to understand why it was not just an excuse. The judge had reasonable grounds to suspect that Whitaker's motive was delay: he had failed to appear until arrest for about two months after his initial failure to appear at a pretrial conference on January 5, 2007. Even if it had been error to deny the continuance and new counsel, the error was harmless: the only two witnesses Whitaker mentions in his papers are what he calls his "alibi" witnesses. He alleges that the passenger in the car where the rifle was found, one Angela Trapp, has promised to appear at trial and take responsibility for the gun, but she was in Florida at the time of trial and beyond subpoena range. The other so-called "alibi" witness was one of his sons who was going to take responsibility for the .45 caliber handgun found in the pickup truck. But Mr. Whitaker received a reversal of that conviction on other grounds and pled guilty on remand.

Ground One for relief should be dismissed.

## Ground Two

In Ground Two, Mr. Whitaker claims he was convicted of having weapons under disability on insufficient evidence. Of course, the second conviction for the .45 caliber handgun is not before this Court because Mr. Whitaker has not yet exhausted his state court remedies on this claim: his appeal from denial of withdrawal of his guilty plea remains pending.

The Warden concedes this claim is preserved for decision on the merits. (Return of Writ, Doc. No. 8, PageID 73.) The Ohio Court of Appeals decided this claim on the merits, holding:

> [*P3] Second, Whitaker argues that one of the counts of having weapons while under disability is not supported by sufficient evidence that he knowingly possessed the firearm. He contends that it is at least equally likely that the gun belonged to his passenger.

However, the State presented evidence that Whitaker had possession of the car in which police found a rifle concealed under a coat and that, upon being stopped by police, Whitaker slumped down in his seat in a manner that it appeared to police he might be concealing something. The State also presented evidence that the weapon was readily accessible in the backseat, that the rifle was operable, and that Whitaker had qualifying prior convictions. When this evidence is viewed in a light most favorable to the State, a reasonable jury could have found the essential elements of the crime proven beyond a reasonable doubt. Thus, sufficient evidence supports his conviction for having weapons while under a disability.

[*P18]  In his second assignment of error, Whitaker argues that insufficient evidence supports his conviction for having weapons while under disability stemming from his possession of the rifle on May 11, 2006.

[*P19]  An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id., citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560; *State v. McGhee*, Lawrence App. No. 04CA15, 2005 Ohio 1585, at P 57. The Court's evaluation of the sufficiency of the evidence raises a question of law and does not permit the Court to weigh the evidence. *State v. Simms*, 165 Ohio App.3d 83, 2005 Ohio 5681, 844 N.E.2d 1212, at P 9, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717).

[*P20]   The State charged Whitaker with violating R.C. 2923.13(A)(3), which provides:
Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration,

-12-

distribution, or trafficking in any drug of abuse * * *.

Whitaker did not establish that he had been relieved from disability as provided in R.C. 2923.14. *See State v. Brooks*, Cuyahoga App. No. 83668, 2005 Ohio 3567, P 28 (holding that being relieved from disability is an affirmative defense), reversed on other grounds by *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006 Ohio 2109, 847 N.E.2d 1174; *State v. Holloway* (Feb 13, 1998), Hamilton App. No. C970067, 1998 Ohio App. LEXIS 475, 1998 WL 57793 (same); State v. Gibson (1993), 89 Ohio App.3d 188, 623 N.E.2d 1266, paragraph four of the syllabus ("Not being relieved from disability is not element of conviction for having weapons while under disability which must be proven by state, but is affirmative defense that may be asserted by defendant."). The State presented Whitaker's prior conviction for Illegal Processing of Drug Documents, and Deputy Spencer testified that he test fired the rifle and that it was operable. Whitaker raises no issue with these elements of the offense.

 [*P21]  Instead, Whitaker relies on the Eighth District's decision in *State v. Duganitz* (1991), 76 Ohio App.3d 363, 601 N.E.2d 642, for the proposition that the State failed to prove beyond a reasonable doubt that he knowingly possessed the rifle found underneath coat in the back of the car. In particular, Whitaker contends that the "[t]here is no way to exclude the passenger of the vehicle as the party in possession. There is no way[] by reasonable inference to find beyond a reasonable doubt that Mr. Whitaker knowingly possessed this gun." Whitaker points out that the only evidence in the record of anyone having knowledge of the rifle in the car is the passenger's statement to Deputy Spencer that there was a "loaded firearm, she actually said gun that was hidden underneath a coat in the back seat." He emphasizes that she had knowledge of the rifle and of the fact that it was loaded. Whitaker also notes that there is no evidence in the record linking Whitaker to the rifle. The rifle was not registered to Whitaker, the State did not present evidence of any scientific tests showing that Whitaker had held or used the rifle, Deputy Spencer testified that he did not know whether the rifle belonged to Whitaker, and Whitaker himself denied ever possessing it.

 [*P22]  In *Duganitz*, after the police stopped the defendant's car, the defendant abruptly jumped out of it. The officer ordered the defendant to freeze and the passenger of the car to place his hands on the dashboard. However, as the officer placed the defendant in the back of the cruiser, he did not watch the passenger in the car. Upon removing the passenger to the back of the cruiser, the officer found

-13-

a loaded handgun underneath an afghan on the front seat of the car and to the right of where the defendant had been sitting. The Eighth District reversed the defendant's conviction for carrying a concealed weapon because the evidence did not prove beyond a reasonable doubt that the defendant had knowingly possessed the handgun. The court explained that "[i]t is a competing construction of the evidence, which is just as plausible, that the passenger had the weapon and the appellant had no knowledge of it."

 [*P23]   However, we believe that the State produced sufficient evidence to allow the case to proceed to the jury. The evidence shows that Whitaker made furtive movements immediately after being stopped by Deputy Spencer. Deputy Spencer testified that, as he approached the vehicle, Whitaker had "ducked down" in the car, and he explained that these actions, in addition to the presence of the knife, suggested to him that Whitaker was hiding something. When viewed in a light most favorable to the prosecution, these furtive movements could help prove beyond a reasonable doubt that Whitaker knew that the rifle was in the car. *See State v. Harris*, Cuyahoga App. No. 88765, 2007 Ohio 3916, at P 14 (noting in a having weapons while under disability case that furtive movements can suggest "guilty knowledge"); *State v. Tisdel*, Cuyahoga App. No. 87516, 2006 Ohio 6763, at P 34 (holding evidence sufficient to support charge of having weapons while under disability where the police officer testified that he observed the defendant making furtive movements that suggested that the defendant had attempted to shove something under his seat, and the officer found a firearm under the defendant's seat); *State v. Young* (Mar. 8 2000), Summit App. No. CA19353, 2000 Ohio App. LEXIS 847, 2000 WL 254893 (holding that sufficient evidence supported possession of a concealed weapon charge where the defendant made "furtive movements, apparently attempting to conceal something.").

 [*P24]   There is also sufficient evidence that Whitaker had possession of the rifle. R.C. 2923.13 provides that no person who has been convicted of a felony offense of violence "shall knowingly acquire, have, carry or use any firearm or dangerous ordnance" unless the person has been relieved from disability pursuant to R.C. 2923.14. Constructive possession can be sufficient to support a charge of having weapons while under a disability. *State v. Cherry*, 171 Ohio App.3d 375, 2007 Ohio 2133, 870 N.E.2d 808, at P 10; *State v. Pitts,* Scioto App. No. 99CA2675, 2000 Ohio 1986 ("In order to 'have' a firearm within the meaning of R.C. 2923.13(A), a person must have actual or constructive possession of it."). "Constructive

possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351. "Thus, possession of a firearm in violation of R.C. 2923.13 may be inferred when the defendant has exercised dominion and control over the area where the firearm was found." Pitts, supra; see, also, *State v. Dorsey*, Franklin App. No. 04AP-737, 2005 Ohio 2334, at P 32 ("Constructive possession of a firearm exists when a defendant knowingly has the power and intention at any given time to exercise dominion and control over a firearm, either directly or through others." (*citing United States v. Clemis* (C.A. 6, 1993), 11 F. 3d 597)).

[*P25] Whitaker had dominion and control over the area where the rifle was found, as the rifle was in the back seat of the car that he was driving and he admitted possessing the car for some time before Deputy Spencer stopped him. Deputy Spencer testified that he found the rifle under a coat and easily accessible to Whitaker in the front seat, and Deputy Spencer showed the jury how Whitaker could have reached the rifle while remaining out of sight and without getting out of his seat. Furthermore, the State admitted the firearm into evidence, and the jury could reasonably conclude that, given its size and shape, Whitaker knew that the firearm was present in the car. Thus, the State presented sufficient evidence that Whitaker knowingly possessed the rifle and, therefore, that he violated R.C. 2923.13. Accordingly, we overrule his second assignment of error.

*State v. Whitaker, supra.*

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

> have found the essential elements of the crime beyond a reasonable
> doubt . . . .  This familiar standard gives full play to the responsibility
> of the trier of fact fairly to resolve conflicts in the testimony, to weigh
> the evidence and to draw reasonable inferences from basic facts to
> ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was adopted

as a matter of Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991).  Of course,

it is state law which determines the elements of offenses;  but once the state has adopted the

elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

Although it did not cite *Jackson v. Virginia*, it is clear from its opinion that is the standard

the Court of Appeals was applying.  The question for this Court is whether that application was

objectively unreasonable.

Mr. Whitaker does not contest that he had a prior qualifying conviction, making him

ineligible to possess a firearm.  He also testified that he knew when he was pulled over that he was

going to be arrested because he was driving under suspension.  This means that if the rifle was his,

he would have had a motive to conceal it.  He also admitted making the movement of "slump[ing]

down in his seat in a manner that appeared to police he might be concealing something."  He

claimed, however, that he had stopped for the police so suddenly that many things, including his

cigarettes and lighter, had fallen on the floor and he was just picking them up because he wanted to

smoke before being taken to jail.  He testified that the rifle belonged to Angela Tibbs, but his

account of how she came to put it in the back of his car without his knowledge, while not completely

implausible, was not likely to have been believed by a jury.  A reasonable juror would want to know

why a man who runs the risk of penitentiary imprisonment for possessing a gun would allow

-16-

someone whose connection with him is completely unexplained put a large amount of unexamined personal property in the back seat of his car? The explanation Whitaker gave to the jury was that she didn't want her boyfriend to "steal" the property from her. Why not put it inside a secure building instead of in a car where, if the boyfriend found the car, the identity of the property might be apparent to him? In another version of the story, the rifle belonged to the boyfriend, so Whitaker was helping Ms. Trapp conceal stolen property. Whitaker also puts emphasis on the fact that he did not have title to the car, but the trial testimony makes it clear that he was buying it and had exclusive possession of it at the time of the stop.

In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia*, *supra,* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6ᵗʰ Cir. 2008).

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. §

2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). While the jury could reasonably have gone the other way, it may have found Mr. Whitaker's explanations of all the inconvenient facts just a little to facile. Because the Court of Appeals conclusion is not an objectively unreasonable application of *Jackson v. Virginia,* Ground Two for relief should be dismissed.

### Grounds Three and Four

In Grounds Three and Four, Mr. Whitaker asserts that his post-arrest silence was improperly commented on by the arresting officer. The Court of Appeals upheld this assignment of error as it relates to the conviction for possessing the .45 caliber handgun. *State v. Whitaker, supra*, ¶¶ 26-37. The Court of Appeals also expressly addressed the question raised by Ground Four, to wit, whether the improper testimony about post-arrest silence as to the handgun tainted the evidence as to the other charge. It held

> [*P38] Whitaker does not specifically argue that both convictions for having a weapon while under disability must be reversed because of Officer Bower's reference to his invocation of his Fifth Amendment rights. However, we will address whether this testimony so tainted Whitaker's conviction for having the rifle while under disability that that conviction must be reversed as well.
>
> [*P39] The two counts of having a weapon while under disability stemmed from wholly separate incidents in which searches by law enforcement officers uncovered weapons. An interval of five months separated these two incidents, and the facts underlying each charge were readily distinguishable. In the count involving the rifle, Whitaker was in a car accompanied by a female passenger, and a sheriff's deputy found the rifle under a coat in the car after the passenger told him of its existence. In the count involving the

-18-

handgun, Whitaker had parked his pickup truck outside of a convenience store, and he had his dog with him. Two city police officers approached him and obtained consent for a search, and they found a handgun behind the seat. Thus, the two counts involved different arresting officers, different vehicles, different weapons, and different passengers. The evidence of each separate offense was simple and direct. Furthermore, sufficient, albeit not overwhelming, evidence supported each count. Importantly, the statement invoking the right to silence occurred following Whitaker's arrest for possessing the handgun and related only to that charge.

[*P40]  Given that the evidence of each separate offense was distinctive, simple, direct, and sufficient, and given that the trial court instructed the jury that there were two separate counts of having a weapon while under disability, we do not believe that this conviction was tainted by Officer Bower's statement. See *State v. Bailey*, Hamilton App. Nos. C-060089 and C-060091, 2007 Ohio 2014, at P 20 (holding that court did not err in refusing to sever separate count of the indictment where the evidence of each offense was simple and direct, the State did not argue that the two offenses were connected or probative of each other, and the trial court instructed the jury to consider each count separately). Thus, we do not believe that the jury was likely to be confused regarding the proof that Whitaker had a rifle while under disability and the proof that he had a handgun while under disability. Instead, we believe that the jury could reasonably be expected to separate out the facts related to each charge so that the count related to the handgun, which was tainted by Officer Bower's statement, did not taint the count related to the rifle. See *State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 405 N.E.2d 24 (explaining that the jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated). Therefore, we affirm Whitaker's conviction for having the rifle while under a disability.

*State v. Whitaker, supra*, ¶¶ 38-40.

Again, this Court must defer to the Ohio Court of Appeals' decision unless it is contrary to or an unreasonable application of federal law clearly established by holdings of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Williams v. Taylor, supra*.  Mr. Whitaker does not rely on any Supreme Court precedent, but does direct our attention to *Davis v. Coyle*, 475 F.3d 761 (6th Cir.

-19-

2007). *Davis* was a capital case in which the Sixth Circuit upheld joinder of a capital aggravated murder charge that Davis murdered his second wife with a charge of having weapons under disability where the disability flowed from his shooting at his first wife. It found the state court ruling was not an unreasonable application of the relevant Supreme Court law, *Spencer v. Texas*, 385 U.S. 554 (1967), and *Marshall v. Lonberger*, 459 U.S. 422 (1983).

The Magistrate Judge concludes the state court decision here also was not an objectively unreasonable application of Supreme Court law. The jury was instructed on the separateness of the two crimes and in fact they were separated in time by a number of months. While they both involved a concealed firearm in a vehicle, one was a rifle in a car with another passenger, while the second was a handgun in a truck with a dog being fed donuts. The vividness of those descriptions by Mr. Whitaker himself would likely have kept the two incidents separated in the jury's mind, a separateness reinforced by the judge's instructions. And there is little likelihood the improper testimony would have had any impact on the failure to appear charge as that incident occurred months after the second firearm incident.

Therefore Grounds Three and Four should be dismissed.

## Conclusion

On the basis of the foregoing analysis, it is respectfully recommended that Petition be dismissed with prejudice. Because reasonable jurists would not disagree, Petitioner should be

denied any requested certificate of appealability and leave to appeal *in forma pauperis*.

August 27, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).